## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.

JASON BISHOP

No. 2:26-mj-00140-KFW

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Elliot Arsenault, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been since March 2022. I am currently assigned to HSI's Portland, Maine office. I have participated in numerous criminal investigations, to include matters involving investigations relating to the trafficking of narcotics. Through my training and experience, I have become familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in drug trafficking.

2.      I make this affidavit in support of the requested criminal complaint and accompanying arrest warrant. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, other agents, and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested complaint and warrant.

### PROBABLE CAUSE

3.      I have learned from my participation in this investigation, and from conferring with law enforcement officers assigned to the Maine Drug Enforcement Agency ("MDEA"), as well as from reviewing their reports, that since at least May of

2025, the MDEA has been investigating the trafficking of controlled substances, to include methamphetamine, fentanyl, and crack cocaine, by JASON BISHOP, the defendant.

4.     Working together with an undercover law enforcement agent (the "UC") and at the direction of HSI and MDEA, on about November 5, 2025, and November 19, 2025, a confidential source of information ("CS-1"),[1] conducted purchases of controlled substances from BISHOP. CS-1 had previously identified BISHOP to law enforcement as a Lewiston drug trafficker, from whom CS-1 had previously witnessed associates purchasing. Prior to the controlled buys, law enforcement identified BISHOP's residence through law enforcement databases and otherwise as 23 Wakefield Street in Lewiston (the "Target Residence").

5.     For each of the two controlled buys, CS-1 arranged with BISHOP by phone to meet at a designated location in Lewiston. The UC drove CS-1 to the agreed-upon location for each transaction. Further, CS-1 was equipped with an electronic recording device and furnished with $300 of prerecorded buy money for each transaction. After each controlled buy had been arranged, MDEA agents surveilled BISHOP departing the Target Residence and traveling to the meet location, where BISHOP met with the UC and CS-1. On about November 5, 2025, BISHOP furnished CS-1 with approximately 26

---

[1]     CS-1 has a lengthy criminal history, to include prior drug trafficking charges. At the time of the controlled purchases described herein, CS-1 did not have a pending criminal case and cooperated with law enforcement for remuneration. CS-1's information has been corroborated by, among other things, physical and electronic surveillance, and has been deemed to be reliable.

grams of methamphetamine in exchange for $300. On about November 19, 2025, BISHOP furnished CS-1 with approximately 12 grams of fentanyl. These drugs were analyzed using the TruNarc field test and found to be the substances described above.

6.      Thereafter, on about February 2, 2026, HSI and MDEA agents executed a judicially authorized search warrant at the Target Residence. Among other things, agents recovered the following controlled substances in the following approximate amounts:

a.      189 grams of methamphetamine, which was confirmed by the DEA lab to be approximately 98% pure methamphetamine;

b.      308 grams of cocaine base, which was later confirmed by the DEA lab to be crack cocaine;

c.      165 grams of cocaine, which was later confirmed by the DEA lab to be cocaine;

d.      312 grams of suspected fentanyl powder, which, as of this writing, is currently pending testing at the DEA lab.

Furthermore, agents recovered $3210 in suspected drug proceeds from BISHOP's bedroom, as well as two firearms located in a room across the hall from BISHOP's bedroom which also contained an inversion table.[2] Those firearms are more particularly described as a Hi-Point .45 caliber Rifle, Model 4595 bearing serial number R30444

---

[2]      Here it should be noted that in a monitored telephone call between a second confidential source ("CS-2") and BISHOP that took place on about February 2, 2026, BISHOP had stated he was suffering from bank pain due to sciatica and had been using an inversion table.

("Subject Firearm-1"), and a Hi-Point .45 H/G model JHP, bearing serial number X4223287 ("Subject Firearm-2").

7.    While the search of the Target Residence proceeded, agents took BISHOP into custody and transported him to the Lewiston Police Department, at which time BISHOP waived his *Miranda* rights and agreed to speak with agents. I have reviewed the video and audio recording of BISHOP's interview, from which I learned that BISHOP stated the following, in substance and in part:

a.    BISHOP initially claimed ownership of a relatively small quantity of drugs that he anticipated that officers would find during a search of his room. He sought to clarify a number of times whether officers intended to search just his room or the whole house; he was informed the whole house would be searched.

b.    BISHOP stated that he was a drug dealer who did not even have that many customers, maybe four, five or six. He further stated that he generally sold methamphetamine, crack cocaine, and powder cocaine to these customers, and sold at most approximately half-ounce increments at a time. He then described how customers contacted him by calling a flip phone that he used as a pager; he would return the customer's call from an iPhone.

c.    BISHOP offered to participate in a controlled buy from his supplier if it would keep him out of jail. He stated that he could buy whatever officers wanted, including methamphetamine, crack cocaine, powder cocaine, and fentanyl. For fentanyl, BISHOP cautioned that he needed to order larger quantities in advance to ensure his source of supply would have it available.

d.      During the interview, BISHOP informed the interviewing officer that he had a quantity of methamphetamine hidden in his groin area, which he promptly produced to the officer. BISHOP estimated that it was approximately a half-ounce of methamphetamine.

e.      BISHOP provided detailed information about the prices and quantities of various drugs he bought and sold. He described that his practice was to dilute fentanyl that he purchased by approximately 50% before re-selling it to his customers in order to make sure they did not overdose.

f.      As the interview progressed, the search of the Target Residence continued. BISHOP was informed that agents had found large quantities of suspected methamphetamine, crack, cocaine, and fentanyl elsewhere in the Target Residence. At that time, BISHOP claimed ownership of those controlled substances.

g.      BISHOP denied that he owned firearms and stated that he was not allowed to have firearms. He stated that the person he lived with ("Person-1") did possess numerous firearms. BISHOP stated that he had handled Person-1's firearms in the past at the Target Residence.

8.      In addition to Subject Firearm-1 and Subject Firearm-2, agents recovered ten additional firearms throughout the Target Residence. MDEA agents conducted a *Mirandized* interview of Person-1 at the Target Residence after the firearms had been recovered. Person-1 took ownership of the ten firearms located throughout the Target Residence, but stated that he did not own Subject Firearm-1 or Subject Firearm-2. Person-1 stated, in substance, that BISHOP told Person-1 that BISHOP had acquired

5

Subject Firearm-1 in a trade and was most likely going to keep it. Person-1 stated that he did not know anything about Subject Firearm-2.[3]

9.   I have reviewed a report prepared by an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and conferred with that agent, from which I learned that the ATF has determined that Subject Firearm-1 and Subject Firearm-2 were manufactured outside of the state of Maine, and therefore traveled in interstate commerce as they were recovered from the Target Residence in Lewiston.

10.   I have reviewed government records reflecting BISHOP's criminal history, from which I have learned that BISHOP has been convicted of multiple prior felonies, to include: Unlawful Trafficking of Scheduled Drugs, in violation of 17-A MRSA § 1107-A(1), (B-1) (3) (more than 200 milligrams of heroin, and more than 2 grams of cocaine base), Docket No. ANDCDCR201900477, for which he was sentenced to five years in prison, all but eight months suspended, on August 27, 2018; and Unlawful Trafficking of Scheduled Drugs, in violation of 17-A MRSA § 1103(1-A) (A) (a Schedule W drug, e.g.,

---

[3]   The United States Attorney's Office received a notarized letter forwarded by the Maine Attorney General's Office on about April 29, 2026. The letter, purporting to be from Person-1, indicates that Person-1 is the legal owner of Subject Firearm-1 and Subject Firearm-2, and recants Person-1's statements to officers disclaiming ownership during the search of the Target Residence. The letter further states that the fentanyl recovered by law enforcement at the Target Residence was found in an area of the Target Residence to which BISHOP did not have access. Person-1 accuses other individuals of being the true owners of the fentanyl. I believe that, to the extent that this letter is actually from Person-1, Person-1 was coerced into providing the letter by BISHOP after BISHOP learned of impending federal charges against him. This conduct, if proven, would constitute witness tampering in violation of 18 U.S.C. § 1512.

methamphetamine or cocaine), Docket No. ANDCDCR202301030, for which he was sentenced to 30 months in prison on February 12, 2024.

## CONCLUSION

11.    Therefore, based on the foregoing, I respectfully submit that there is probable cause to charge JASON BISHOP, the defendant, by Criminal Complaint, with possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and unlawful possession of a firearm by a felon, in violation of Title 18, United States Code, Section 922(g)(1), and I request that the accompanying Criminal Complaint and arrest warrant issue.

Elliot Arsenault
Special Agent
Homeland Security Investigations

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date:  May 01 2026

City and state:  Portland, Maine

_____
Judge's signature

Karen Frink Wolf,   U.S. Magistrate Judge
Printed name and title

7